IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KRISTIAN LAURA PETTINE GALLEGOS,

          Plaintiff,

vs.                                                           1:19-cv-00819-LF

ANDREW SAUL,
Commissioner of Social Security Administration,

          Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Kristian Laura Pettine Gallegos' Motion to Reverse and Remand for Rehearing, with Supporting Memorandum, filed March 2, 2020 (Doc. 18), which was fully briefed on June 15, 2020. *See* Docs. 22, 23, 24. The parties consented to my entering final judgment in this case. Docs. 3, 8, 9. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge's ("ALJ") decision at step five was not supported by substantial evidence. I therefore GRANT Ms. Gallegos' motion and remand this case to the Commissioner for further proceedings.

**I.**     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Gallegos was born on August 9, 1973. AR 247.[3] She earned two associate degrees and lives with her daughter and a friend in Albuquerque, New Mexico. AR 76, 289. Ms. Gallegos was in the military from 1993 through 1997 where she worked as a heavy equipment operator. AR 247, 291. After the military, she worked as a nurse on a surgical floor, at a doctor's office, and on a nurse helpline. AR 78–79, 291. Ms. Gallegos filed an application for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") on

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 13-1 through 13-9 are the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

September 10, 2015,[4] alleging disability since November 1, 2014, due to PTSD/anxiety/depression/panic, psychosis, head/neck pain, Chiari malformation in her brain stem, diabetes, and heart neurocardiogenic syncope. AR 248–57, 290. The Social Security Administration ("SSA") denied her claim initially and on reconsideration. AR 102–65. Ms. Gallegos requested a hearing before an ALJ. AR 196–97.

On August 15, 2017, ALJ Michael Leppala held a hearing. AR 65–101. Ms. Gallegos was not represented at that hearing. AR 68. The ALJ gave Ms. Gallegos the opportunity to postpone the hearing and get representation, but Ms. Gallegos choose to go forward without representation. AR 70–71, 220. At the hearing, the ALJ noted that he only had medical records for Ms. Gallegos through January 2016. AR 68–69. Ms. Gallegos had filled out a form identifying her recent medical treatment providers. AR 365. The ALJ stated that the SSA would use that form to request updated medical records. AR 74, 88–89. After the SSA updated her medical records, Ms. Gallegos requested a second hearing which took place on May 23, 2018. AR 57–64. ALJ Leppala issued his unfavorable decision on June 19, 2018. AR 37–56.

The ALJ found that Ms. Gallegos met the insured status requirements of the Social Security Act through December 31, 2019. AR 43. At step one, the ALJ found that Ms. Gallegos had not engaged in substantial, gainful activity since November 1, 2014, her alleged onset date. *Id*. At step two, the ALJ found that Ms. Gallegos' schizophrenic, paranoid, and other functional psychotic disorders, anxiety disorders, post-traumatic stress disorder (PTSD), and drug and substance addiction disorders were severe impairments. *Id*. The ALJ found that her diabetes mellitus and hypertension were non-severe. *Id*. At step three, the ALJ found that none of Ms.

---

[4] In his decision, the ALJ noted that Ms. Gallegos filed her DIB and SSI applications on June 24, 2015. AR 40. The applications, however, are dated September 10, 2015. AR 247–57. The Court presumes the June 24 date is a typographical error.

4

Gallegos' impairments, alone or in combination, met or medically equaled a Listing.  AR 43–45.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Gallegos' RFC.  AR 45–48.  The ALJ found that Ms. Gallegos had the RFC to

> perform a full range of work at all exertional levels, but with the following non-exertional limitations:  the Claimant can understand, carry out, and remember simple one to two step instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers, and work situations, deal with routine changes in work setting, maintain concentration persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday.  She is limited to incidental contact with coworkers and supervisors and no contact with the public.

AR 45.

At step four, the ALJ concluded that Ms. Gallegos was not capable of performing her past relevant work as a nurse.  AR 48.  At step five, and relying on the testimony of the vocational expert ("VE"),[5] the ALJ found that Ms. Gallegos was able to perform work that existed in sufficient numbers in the national economy, including laborer, routing clerk, and hand packager.  AR 49.  The ALJ thus found Ms. Gallegos not disabled at step five.  AR 49–50.

Ms. Gallegos requested that the Appeals Council review the ALJ's unfavorable decision.  AR 244–46.  On December 21, 2018, the Appeals Council denied the request for review.  AR 24–34.  Ms. Gallegos timely filed her appeal to this Court on September 6, 2019.  Doc. 1.[6]

**IV.     Ms. Gallegos' Claims**

Ms. Gallegos raises two main arguments for reversing and remanding this case.  First, Ms. Gallegos contends that the ALJ failed to properly evaluate Ms. Gallegos' RFC pursuant to

---

[5] The ALJ notes that "Michael L. Driscoll, an impartial vocational expert, also appeared at the hearing."  AR 40.  The transcript of the hearing, however, notes that the VE was "Ms. Lewis."  AR 65–66, 92.

[6] Generally, a claimant has 60 days to file an appeal which begins to run five days after the decision is mailed.  20 C.F.R. § 404.981; *see also* AR 26.  In this case, Ms. Gallegos requested extensions of time to file her civil action making her complaint in this Court timely.  AR 3–12.

5

Social Security Rulings 96-8p and 16-3p.  Doc. 18 at 11–13; Doc. 23 at 1.  Specifically, Ms. Gallegos argues that the ALJ failed to develop the record with respect to her complaints of physical symptoms and limitations.  *Id.*  Second, Ms. Gallegos contends that the ALJ failed to address an apparent conflict between the VE testimony and the Dictionary of Occupational Titles ("DOT").  Doc. 18 at 13–14; Doc. 23 at 1–2.  She argues that there is a conflict between a limitation to simple one to two-step instructions and work-related decisions, and jobs that the VE testified she could perform which require "level 2" reasoning.  Because I find that the ALJ failed to resolve an apparent conflict between the VE testimony and the DOT, I will not address the other issue raised by Ms. Gallegos because it may be affected by the Commissioner's treatment of this case on remand.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V.      Analysis**

At step five, the burden shifts to the Commissioner to show that "there are sufficient jobs in the national economy for a hypothetical person with [the claimant's] impairments," *Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005), "given her age, education, and work experience," *Lax*, 489 F.3d at 1084.  The Commissioner meets this burden if the decision is supported by substantial evidence.  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The Tenth Circuit has held that "an ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).  After the Tenth Circuit's holding in *Haddock*, the Social Security Administration promulgated Social Security Ruling ("SSR") 00-4p, which states that

> before relying on VE . . . evidence to support a disability determination or decision, our adjudicators must:  Identify and obtain a reasonable explanation for

6

> any conflicts between occupational evidence provided by VEs . . . and
> information in the Dictionary of Occupational Titles (DOT) . . . and [e]xplain in
> the determination or decision how any conflict that has been identified was
> resolved.

SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). SSR 00-4p goes on to say that "[w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] **must** elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." *Id*. at *2 (emphasis added). "The [ALJ] **must** explain the resolution of the conflict irrespective of how the conflict was identified." *Id*. at *4 (emphasis added).

The Tenth Circuit has addressed the interplay between a claimant's RFC and the reasoning levels listed for jobs in the DOT.[7] *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). In *Hackett*, the ALJ found that the claimant had the RFC to perform "simple and routine work tasks." 395 F.3d 1176. The ALJ relayed this RFC to the VE, and the VE testified that a claimant with this RFC would be able to perform the jobs of surveillance-system monitor and call-out operator. *Id*. According to the DOT, these jobs both require a reasoning level of three. *Id*. Under the DOT, a reasoning level three requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form," and

---

[7] Each occupation in the DOT includes General Education Development ("GED") levels. The GED level for each occupation can be found in the "definition trailer" following the DOT description of each occupation. *See* APPENDIX C: COMPONENTS OF THE DEFINITION TRAILER, https://occupationalinfo.org/appendxc_1.html (last visited July 1, 2020). "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective." *Id*.

The GED component is divided into three sub-components: Reasoning Development (R); Mathematical Development (M); and Language Development (L). For example, the definition trailer for laborer reads: GOE: 05.09.01 STRENGTH: M **GED: R2 M1 L1** SVP: 2 DLU: 88. https://occupationalinfo.org/92/922687058.html (last visited July 1, 2020) (emphasis added).

7

"[d]eal with problems involving several concrete variables in or from standardized situations." *Id*. The Tenth Circuit held that there was an apparent, unresolved conflict between "simple and routine work tasks" and jobs requiring level three reasoning. *Id*. The Tenth Circuit remanded the case to allow the ALJ to resolve that conflict. *Id*. There was "no indication in the record that the VE expressly acknowledged a conflict with the DOT or that he offered any explanation for the conflict." *Id.* at 1175.

This case is similar to *Hackett*. Here, Ms. Gallegos contends that according to the DOT, the jobs of laborer, routing clerk, and hand packager all require her to perform at a reasoning level that conflicts with the hypothetical the ALJ gave the VE, and with her RFC. Doc. 18 at 13–14; Doc. 23 at 1–2. Ms. Gallegos argues that the reasoning level for the jobs identified by the VE would be eliminated for someone who can only understand, carry out, and remember simple one to two-step instructions and make commensurate work-related decisions, rendering the VE testimony unreliable. *Id*. I agree.

The jobs identified by the VE all have a reasoning level of 2. Level-2 reasoning requires the ability to

> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

*See* 922.687-058 LABORER, STORES (any industry); 920.587-018; PACKAGER, HAND (any industry); 222.587-038 ROUTER (clerical), https://occupationalinfo.org (last visited July 1, 2020). On the other hand, the ALJ's RFC stated that Ms. Gallegos can "understand, carry out, and remember simple one to two step instructions and make commensurate work-related decisions." *See* AR 45. A person with Ms. Gallegos' RFC is more suitable to a job which requires level-1 reasoning. A job with level-1 reasoning requires the ability to

8

> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

https://occupationalinfo.org/appendxc_1.html (last visited July 1, 2020). Accordingly, there is an apparent, unresolved conflict between the RFC that requires that Ms. Gallegos to "remember simple one to twostep instructions and make commensurate work-related decisions," AR 45, and jobs requiring level-2 reasoning.

In this case, as in *Hackett*, the ALJ failed to resolve the conflict. The ALJ did not ask the VE to advise him of any conflict between her testimony and the DOT. The VE did not offer any testimony that expressly acknowledged a conflict with the DOT or offer any explanation for the conflict. *See* AR 92–97. Without any explanation by the VE, the Court will not assume that the laborer, hand packager, and router jobs do not require the ability to perform tasks that require more than one- to two-step instructions. Thus, substantial evidence does not support the ALJ's finding that these are jobs that Ms. Gallegos can perform. The ALJ failed to resolve this conflict, and the case will be remanded so that the ALJ can resolve it.

The Commissioner argues that the GED levels listed in the DOT do not describe the specific mental or skill requirements of a job, but instead "embrace[] those aspects of *education* (formal and informal) which are required of the worker for satisfactory job performance." Doc. 24 at 14 (quoting DOT, App'x C, 1991 WL 688702 (emphasis added)). The Commissioner cites two unpublished Tenth Circuit cases in support of this argument: *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished), and *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) (unpublished). However, these cases did not cite *Hackett*, much less reconcile their reasoning with its holding. And, because they are unpublished, they are not precedential.

10th Cir. R. 32.1(A).[8]  Lower courts must follow *Hackett* over the unpublished cases.  The fact that *Hackett* did not address this particular argument does not undermine its precedential effect.  *See Leyba v. Colvin*, No. CV 15-903 GBW, 2016 WL 9777219, at *4 (D.N.M. Sept. 23, 2016) (collecting cases in which "courts have held that, to the extent that the unpublished opinion in *Anderson* is in conflict with *Hackett*, the rationale of the latter should prevail").  The rule announced in *Hackett*—that conflicts between the GED and RFC must be resolved—requires remand in this case.

The Commissioner further argues that Ms. Gallegos' argument fails because in *Hackett*, the Tenth Circuit "indicated that level-two reasoning is consistent with 'simple and routine work tasks.'"  Doc. 22 at 15.  The ALJ's language in *Hackett* was vague and did not track the language of a particular reasoning level listed in Appendix C.  Here, the ALJ did not assess Ms. Gallegos' RFC to include "simple and routine work tasks."  Rather, he specifically found that Ms. Gallegos had the ability to "understand, carry out, and remember simple one to two step instructions."  AR 45.  This language mirrors the language of level-1 reasoning in Appendix C.  The Court will not assume that the ALJ intended to assign Ms. Gallegos a reasoning level higher than the one he specified in the RFC.

## VI.     Conclusion

The ALJ erred by failing to resolve the conflict between the VE testimony and the DOT.  The Court remands this case so that the ALJ can resolve this conflict.  The Court does not reach

---

[8] The Commissioner also invites the Court to follow the reasoning of other district courts in the Tenth Circuit.  Doc. 22 at 15 (citing cases from the District of Kansas, the Northern District of Oklahoma, and the Eastern District of Oklahoma).  The Court declines this invitation for the same reason it will not follow *Anderson* and *Mounts*.

10

Ms. Gallegos' other claimed error as it "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

      IT IS THEREFORE ORDERED that plaintiff Kristian Laura Pettine Gallegos' Motion to Reverse and Remand for Rehearing, with Supporting Memorandum (Doc. 18) is GRANTED.

      IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

                                           */s/ Laura Fashing*
                                           Laura Fashing
                                           United States Magistrate Judge
                                             Presiding by Consent